And our final case this morning is United States v. Paris Steele. Mr. Boyle. Good afternoon, Your Honor. Good afternoon, all Your Honors. May it please the Court, my name is Patrick Boyle. I am the appointed representative attorney for Mr. Paris Steele, the appellate in this case. Why we are here is because the district court in sentencing Mr. Steele abused its discretion and imposed a significantly above guideline sentence of 80 months. Prior to the sentencing hearing commencing, the parties were in agreement and the probation officer confirmed that the correct and applicable guideline range for Mr. Steele's offense and his criminal history would be an advisory guideline range of 51 to 63 months. Despite that, the government did seek a sentence of 80 months and Judge Guzman imposed a sentence of 80 months. But the problem with that was that the court failed to adequately consider the entirety of who Mr. Steele was as a unique individual and a defendant and instead greatly overemphasized a very regrettable and wrong mistake that Mr. Steele made while he was on bond during the pendency of his case. And by overemphasizing that one mistake, the court greatly underemphasized and frankly, despite kind of mentioning it in a litany while imposing sentencing, the fact that they had considered it, I think it revealed that the court had failed to properly and adequately consider a great deal of mitigation that Mr. Steele had. He was a very unique federal defendant. First of all, the fact that he was 19 years old when he was essentially targeted by an ATF informant. Someone had been working for the ATF for over a decade and obviously he was interested in gun cases. Mr. Steele was not a gun trafficker when approached. Mr. Steele was not someone in possession of a gun. He was selling small quantities of drugs. So this is unique. He's 19. The concept of selling guns is introduced by the undercover. Unfortunately, Mr. Steele does provide five guns over a six-month period, but each time, and the evidence supported, and I don't think it was ever disputed, that each time these guns were provided, Mr. Steele had to obtain them from someone else. And I think they were obtained, I think, I think the evidence supported the fact that it was five different individuals, sometimes an antique shotgun, someone's grandfather's shotgun. And unfortunately, he did do these things. But this is not some sophisticated established gun trafficker. Mr. Boyle, a question concerning context. Sure. Were you, and you were present at the sentencing. Yes, Judge. Were, was this decision with regard to the enhancement being taken off, was that that morning, or had that been preceding that? It was literally that morning. We had, the parties had fully briefed it. The government, in its initial sentencing memorandum, had sought the four-level enhancement for gun trafficking. I filed my sentencing memorandum, but also my objections to the pre-sentence report specifically. That was really, I think, the only guideline issue we really contested was that four-level. And the morning of sentencing, they said, yeah, we'll, you might as well have a good argument there. We're going to come off of that, and we'll just seek, still seeking the same 80-month sentence, but under 3553A. So that is correct, Judge. All right. And the reasoning there was that this type of circumstance, given these deals, was best handled under 3553A, and also the burden of proof of, proven by proponents of the evidence, the defendant's knowledge about the firearms being used for unlawful purpose, it was better to get rid of the enhancement and deal with it through the sentencing. Yes, Judge. And there was also a question whether Mr. Steele knew that this was someone who shouldn't even be coming into possession of firearms, meaning the undercover. That was also going to be an issue. Okay. Thank you. Thank you, Judge. And yes, I think the district court was somewhat surprised by that, understandably, the fact that the parties had come to that agreement, and the government was no longer seeking that enhancement. But so I just, I do want to briefly talk about the significant mitigation here. This is, when Mr. Steele pled guilty to this offense, that's his first adult conviction. That was his first felony conviction. He was sentenced, and we did not dispute that he was sentenced as a Category 2 offender, but all of those offenses were in federal court. One of them was a cannabis possession. He ended up with three criminal history points, Category 2. So if anything, it's possible a district court would view that, the fact that all of the criminal history is juvenile. Maybe that's overstating his criminal history. Maybe I should actually view this person as a Category 1. That didn't happen in this case. We, it was talked about in the pre-sentence interview. The pre-sentence interview talks about the serious injury, attack that Mr. Steele suffered as a 14-year-old, probably at the most vulnerable year of any young person, their freshman year in high school, being stabbed and almost dying, having to have two hospital stays. Later that year, having a best friend, both of them being shot at, the friend shot and killed, Mr. Steele seeing that, and losing other friends to gang violence, which goes specifically to that regrettable video that Mr. Steele made. But what's most important, I think, is that I was appointed to represent Mr. Steele on the day of his arrest, and the first step, of course, is trying to get him released on a bond. Mr. Steele had an extremely impressive grandmother, a very safe, stable place to live. He issued a bond, and Mr. Steele, of all, virtually of all the people I've ever represented, took the best and full advantage of that release. His father, luckily, had a good job at a factory. Mr. Steele got employment there as well. We provided a letter for Mr. Steele's employer, who said, talked about his responsibility. In fact, he took on the job until 5 p.m., started as a custodial, worked up to operating a lathe, and that job would still be waiting for him when he completed his sentence. So, Mr. Steele was out for 15 months prior to that video being made, and I just do not think the district court properly considered that, and instead focused on that one evening that led to a serious consequences prior to the sentencing of his bond being revoked, losing that job, being in custody. He then spent three years in custody. He accepted responsibility, pled guilty, but then waited three years in custody. Completely different man by the time the sentencing was imposed, which frankly, I don't think you would get that impression just from what the judge stated. It was almost as if he was being sentenced the day after that video had been made, and for those reasons, I think the judge did abuse his discretion in imposing this above-guideline sentence, and I will reserve any additional time. Thank you. That's fine. Thank you. Ms. Campbell. May it please the court, my name is Andrea Campbell. I'm here on behalf of the United States. The district court's sentence of 80 months imprisonment was substantively reasonable and procedurally sound. The district court acted well within its discretion in imposing an above-guidelines 80-month sentence after a thorough review of the 3553A factors. The defendant, who had a history of gang involvement and activity, sold five firearms, one of which had an obliterated serial number. He sold a total of 34.6 grams of cocaine, all to a confidential informant. On two occasions, the defendant sold these firearms and narcotics during the same transaction. Then, while the defendant was on federal pretrial release for the narcotics and firearms charges, he made three separate videos posted to YouTube, which showed him holding firearms and taunting rival gang members. The district court reasonably and properly considered these facts to be aggravating, to reflect a strong need for both general and specific deterrence, and to be indicative of the defendant's failure to realize the seriousness and wrongfulness of his conduct. Particularly given that the videos were not considered when calculating the defendant's guideline range, the district court acted well within its discretion in concluding that the guidelines range understated the gravity of the defendant's offense conduct, and that an above-guidelines sentence of 80 years was not considered unreasonable under the circumstances. Ms. Campbell, what about Mr. Boyle's argument that there was this quick change that occurred? So obviously everyone's operating under certain assumptions, then we've got these competing memos with regard to the enhancement, and then the judge finds out, I don't know if it's on the record or shortly before he goes on the record, that there's the enhancements going away, and he kind of confirms with both sides, this is correct, this is correct. Is that something we should take into account in terms of our analysis? I don't believe so, Your Honor. Again, the agreed-upon guidelines range was 51-63 months. However, the court evaluated both the mitigating circumstances that the defendant put forth, but also the aggravating factors that were put forth by the prosecution, particularly those three YouTube videos. Those YouTube videos that were made while he was on pretrial release, in combination with the actual narcotics and gun trafficking offenses. The guidelines range is advisory. However, it was a combined adjusted offense-level guideline, and that was the guidelines range. It was taking into account both the gun-related charge and the narcotics conduct. It is true that the gun-related charge had a 60-month statutory maximum, but the narcotics-related charge had a 20-year statutory maximum. And so the judge was well within the statutory maximum to take into account everything and do an above-guideline sentence based off of the aggravating nature of those YouTube videos, which were not considered in the guidelines calculation. And he was well within the statutory maximum with only 80 months for the narcotics charge. Ms. Campbell, the judge gave 80 months on both counts one and three, right? Your Honor, I believe that he gave 60 months on the gun-related charge, count one, and 80 months on the narcotics charge to run concurrent. How much on the narcotics charge? Eighty months. Eighty months. And that's above the statutory limit? No. The 80 months on the narcotics charge is actually below the statutory maximum. It's 20 years. Do you think there was an adequate discussion of the narcotics violation as compared to the gun discussion by the judge? Your Honor, the district court was not required to specifically focus on or address the crime of selling narcotics. The offense conduct, which would be discussing the narcotics, is a 3553A factor, and the court does not have to explicitly state every factor or how it's weighed. And in this case, the nature and circumstances of the narcotics conduct is clear and undisputed because it's laid out in the factual basis of the plea agreement in this case, and it's within the pre-sentence investigation report. What's not laid out in the factual basis of the plea agreement or considered in the guidelines calculation is the pre-trial conduct of the defendant, which the court found particularly abhorrent in the aggravating factors for and above guideline sentence. Additionally, I'd like to add, the record is clear that the court did consider the narcotics offense conduct. The offense conduct, as I said, is not disputed here. There is a plea agreement in this case, and the PSR in this case outlines the factual basis, and that was adopted by the court. So that is a finding by the court regarding the narcotics conduct. The court adopted the agreed upon guidelines, and that was based upon a combined adjusted offense level for both the gun offense and the narcotics offense. So the narcotics offense was discussed at length in the filings of the parties, and the court stated that it considered those filings, so the sentencing memo, and as defense counsel mentioned, the objection to the pre-sentence investigation report, which discussed at length the conduct in this case. And the court also considered the arguments of the parties. Both the prosecution and the defense discussed the narcotics element of this conduct. If there are no further questions, the government asks this court to affirm the district court sentence. All right, thank you very much. Mr. Boyle. Thank you, Judge. Yes, I would think the judge's question is were on point, because it was clear from the sentencing hearing that the judge was driven almost exclusively by the gun violations, either the gun convictions and or the video involving the gun. I think, frankly, his intention was to sentence Mr. Steele to the 80 months, but then obviously there's a statutory limit of 60 months, so therefore there was kind of a shift to the narcotics. I just don't think, because of that, and I think it was clear that the rationale did not support the 80 months on the narcotic charge. The judge stated you cannot overstate the seriousness of these gun charges, and that's certainly something I share, and we all have that concern, but just the fact of the matter is it is statutory capped at 60 months, and so by imposing an 80 month sentence, he was abusing his discretion and overstating it. When he imposed his sentence, the district court's judge said that I pay a great deal of attention to what a defendant does from the time he's arrested to when he's sentenced, because that can be sometimes years down the road. Respectfully, I do not believe the judge adequately considered those 15 months that Mr. Steele was going to work every day at that factory supporting his family, but then even more significantly, the three years he spent in the MCC bettering himself, getting certificates, frankly growing up, becoming a man, a much different man than the person who made those videos that night, and his elocution, I think, spoke to that, how different he was. So while the district judge didn't spend any time on the confidential source either, did he? No. The neighbor? No. Who was the one who enticed him into the gun sales originally? That was never looked into, and the fact that that individual's been paid over $200,000 by the ATF, who's been doing this for years, and was, again, I don't think there was any So thank you, judges, very much. Thank you. Thanks to all counsel, the case is taken under advisement, and the court is in recess.